# UNITED STATES DISTRICT COURT
## Western District of Texas – Waco Division

| | | |
|---|---|---|
| CHARITY DAVIS, | § § § | |
| PLAINTIFF | § | CASE NUMBER: 6:26-cv-32 |
| | § | |
| VS. | § § | |
| COLUMBIA DEBT RECOVERY, LLC d/b/a GENESIS CREDIT MANAGEMENT, | § § § § § | DEMAND FOR JURY TRIAL |
| DEFENDANT | | |

### COMPLAINT FOR DAMAGES UNDER THE FAIR DEBT COLLECTION PRACTICES ACT, THE TEXAS DEBT COLLECTION ACT, THE TEXAS DECEPTIVE TRADE PRACTICES ACT, AND OTHER EQUITABLE RELIEF

### PARTIES

1. Plaintiff Charity Davis is a natural person who resides in Temple, Texas.

2. Defendant Columbia Debt Recovery, LLC d/b/a Genesis is a Washington limited liability company with its principal place of business in Everett, Washington.

### JURISDICTION AND VENUE

3. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

4. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## ARTICLE III STANDING

6. Plaintiff has Article III standing to bring her FDCPA claim against Defendant because Defendant's communications in attempt to collect an alleged debt constitute an unwanted intrusion upon her solitude, seclusion, and peace and quiet, which are common law analogues to the FDCPA violations asserted below. See Vazzano v. Receivable Mgmt. Servs., LLC, No. 3:21-CV-0825-D, 2022 WL 17406317, at *2 (N.D. Tex. Dec. 2, 2022) (citing TransUnion LLC v. Ramirez, 594 U.S. 413, 141 S. Ct. 2190, 2204 (2021)); see also Gadelhak v. AT&T Servs., Inc., 950 F.3d 458, 462 (7th Cir. 2020) (Barrett, J.) ("The harm posed by unwanted text messages is analogous to that type of intrusive invasion of privacy.").

7. Plaintiff's standing arises from violations of her statutory rights under §§ 1692e, 1692f, and 1692k of the FDCPA, which are designed to prevent misleading, abusive, and unfair collection practices.

8. Defendant's collection efforts with respect to the alleged debt caused Plaintiff to suffer concrete and particularized harm, inter alia, because the FDCPA provides Plaintiff with the legally protected right not to be misled about the legal status of a debt or treated unfairly with respect to any action for the collection of any consumer debt.

9. Moreover, the emotional distress Plaintiff experienced is a sufficient concrete injury to establish Article III standing. See Mayfield v. LTD Fin. Servs., L.P., No. 4:20-CV-01966, 2021 WL 4481089, at *4 (S.D. Tex. Sept. 30, 2021) (citing Rideau v. Keller Indep. Sch. Dist., 819 F.3d 155, 169 (5th Cir. 2016) ("[E]motional harm satisfies the 'injury in fact' requirement of constitutional standing.")); see also Smith v. Moss Law Firm, P.C., No. 18-2449, 2020 WL 584617, at *5 (N.D. Tex. Feb. 6, 2020).

10. Defendant's attempt to collect an alleged debt from Plaintiff that was contractually excused by a force majeure clause, and Defendant's systematic blocking of Plaintiff's

attempts to dispute the debt, is the type of harassment and invasion of privacy that Congress sought to protect by enacting the FDCPA.

11. Defendant's communications to collect an alleged debt from a consumer "disadvantages other debt collectors" who properly follow the FDCPA. 15 U.S.C. § 1692.

12. Plaintiff further suffered concrete harm through the publication of false credit information to consumer reporting agencies, damaging her credit reputation and causing informational injury with real-world consequences.

## STATEMENT OF FACTS

13. At all times relevant to this action, Defendant collected consumer debts.

14. Defendant regularly uses instrumentalities of interstate commerce and the mails to collect consumer debts owed or due or asserted to be owed or due another.

15. The principal source of Defendant's revenue is debt collection.

16. Defendant is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

17. Defendant is a "debt collector" as defined by Tex. Fin. Code § 392.001(6).

18. At all relevant times, Defendant was engaged in "trade" and "commerce" as defined by Tex. Bus. & Com. Code § 17.45(6).

19. As described, infra, Defendant contacted Plaintiff to collect a debt that was incurred primarily for personal, family, or household purposes.

20. This alleged obligation is a "debt" as defined by 15 U.S.C. § 1692a(5).

21. This alleged obligation is a "consumer debt" as defined by Tex. Fin. Code § 392.001(2).

22. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) and Tex. Fin. Code § 392.001(1).

23. Defendant attempted to collect an alleged consumer debt from Plaintiff purportedly owed to Pecan Pointe Apartments in the initial amount of $2,076.88, reference number 0010175953.

24. On or about May 22, 2024, an EF2 tornado struck Plaintiff's apartment at Pecan Pointe Apartments in Temple, Texas, rendering the unit uninhabitable.

25. Plaintiff's lease with Pecan Pointe Apartments contained a force majeure clause at Section 31.2 which expressly excused performance for tornado damage.

26. Section 31.2 of the lease stated: "If we are prevented from completing substantial performance of any obligation under this Lease by occurrences that are beyond our control, including but not limited to, an act of God, strikes, epidemics, war, acts of terrorism, riots, flood, fire, hurricane, tornado, sabotage or governmental regulation, then we shall be excused from any further performance of obligations to the fullest extent allowed by law."

27. The lease explicitly listed "tornado" as a qualifying force majeure event.

28. Pursuant to Section 31.2 of the lease, Plaintiff's performance obligations were contractually excused upon the occurrence of the May 22, 2024 tornado.

29. Despite this contractual protection, Pecan Pointe Apartments placed the alleged $2,076.88 balance with Defendant for collection on or about December 2, 2024.

30. Beginning on April 29, 2025, Defendant sent collection emails to Plaintiff demanding payment on the contractually void debt.

31. Defendant sent a total of twelve (12) collection email communications to Plaintiff on the following dates: April 29, 2025; May 13, 2025; May 27, 2025; June 11, 2025; June 24, 2025; July 8, 2025; July 22, 2025; August 5, 2025; August 19, 2025; October 2, 2025; October 22, 2025; and November 6, 2025.

32. Over the course of these collection communications, Defendant increased the alleged balance from $2,076.88 to $2,192.27, adding $115.39 in purported interest charges to a debt that was contractually void.

33. Defendant had no legal right to collect any amount on this debt, much less to add interest charges.

34. Defendant configured its email collection system to automatically reject all consumer replies.

35. On August 5, 2025, Plaintiff attempted to respond to Defendant's collection email. Plaintiff's reply was rejected with error code "550 5.7.129 RESOLVER.RST.RestrictedToRecipientsPermission; not authorized to send to recipient."

36. On October 7, 2025, Plaintiff attempted another email reply explicitly stating: "I am aware that the lease states that I am not responsible for God like circumstances such as tornadoes, hurricanes and so forth." This email was rejected with the identical error code.

37. On October 15, 2025, Plaintiff attempted to provide lease documentation to Defendant via email reply. This email was also rejected.

38. Defendant's email system was designed to give consumers the appearance of being able to respond while systematically preventing any consumer communication.

39. This systematic email rejection system constitutes a deceptive means of debt collection.

40. On November 11, 2025, Plaintiff called Defendant at (877) 622-1132 and spoke with a representative identified as Patrick for approximately 28 minutes and 48 seconds.

41. During this call, Patrick stated "I believe you" regarding the invalidity of the debt.

42. Despite acknowledging that he believed Plaintiff's position that the debt was invalid, Patrick refused to cease collection activity and instead instructed Plaintiff to "wait 30 days."

43. On November 13, 2025, Plaintiff called Defendant again and spoke with a representative identified as Ken Jones for approximately 12 minutes and 27 seconds.

44. During this call, Jones mocked Plaintiff for taking "10 months" to resolve the matter, claiming "it should have only taken 2 months."

45. Jones also stated that Defendant uses "a format that covers their behinds."

46. Defendant recalled the account on November 13, 2025, but only after Plaintiff contacted Pecan Pointe Apartments management (Bree Richardson) directly, and Ms. Richardson instructed Defendant to remove the account.

47. Defendant reported the alleged debt to consumer reporting agencies, including Experian.

48. The debt appeared on Plaintiff's Experian credit report through at least November 5, 2025.

49. The credit report reflected an "Account information disputed by consumer" notation, indicating Defendant was aware Plaintiff disputed the debt.

50. Despite knowing the debt was disputed and despite Patrick's November 11, 2025 statement that he believed Plaintiff's position, Defendant continued to report the debt to credit bureaus.

51. Defendant's collection efforts, including but not limited to its twelve collection emails, its systematic blocking of Plaintiff's dispute communications, and its false credit reporting, caused Plaintiff emotional distress in the form of frustration, annoyance, aggravation, and anxiety.

52. Defendant's collection efforts also intruded upon Plaintiff's privacy.

53. Each time Defendant contacted Plaintiff, Defendant occupied Plaintiff's attention such that Plaintiff was unable to attend to other matters.

54. Defendant's communications also forced Plaintiff to lose time by having to tend to Defendant's unwanted contacts and to contact the original creditor directly to resolve the matter.

55. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, invasion of privacy, aggravation that accompanies unwanted collection communications, emotional distress, lost time, and damage to her credit reputation.

## COUNT I
### Violation of 15 U.S.C. § 1692e(2)(A)

56. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 55 above as if fully set forth herein.

57. Section 1692e of the FDCPA prohibits a debt collector from using any false, deceptive, or misleading representation or means in connection with the collection of any debt.

58. Section 1692e(2)(A) specifically prohibits the false representation of the character, amount, or legal status of any debt.

59. Defendant falsely represented that Plaintiff owed a debt when, in fact, the debt was contractually excused by the force majeure clause in Plaintiff's lease.

60. Defendant falsely represented the legal status of the debt by treating it as valid and collectible when it was not.

61. Defendant's conduct constitutes a violation of 15 U.S.C. § 1692e(2)(A).

## COUNT II
### Violation of 15 U.S.C. § 1692e(2)(B)

62. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 55 above as if fully set forth herein.

63. Section 1692e(2)(B) prohibits the false representation of any compensation which may be lawfully received by any debt collector for the collection of a debt.

64. Defendant added $115.39 in interest charges to a debt that was contractually void.

65. Defendant had no legal right to collect any compensation on this debt, including interest.

66. Defendant's conduct constitutes a violation of 15 U.S.C. § 1692e(2)(B).

## COUNT III
## Violation of 15 U.S.C. § 1692e(5)

67. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 55 above as if fully set forth herein.

68. Section 1692e(5) prohibits a debt collector from threatening to take any action that cannot legally be taken or that is not intended to be taken.

69. Defendant threatened continued collection activity and credit reporting on a debt that could not legally be collected due to the force majeure clause.

70. Defendant's conduct constitutes a violation of 15 U.S.C. § 1692e(5).

## COUNT IV
## Violation of 15 U.S.C. § 1692e(8)

71. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 55 above as if fully set forth herein.

72. Section 1692e(8) prohibits communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

73. Defendant reported the debt to consumer reporting agencies when Defendant knew or should have known the debt was contractually void.

74. Defendant continued to report the debt even after Patrick stated "I believe you" regarding Plaintiff's position that the debt was invalid.

75. Defendant's conduct constitutes a violation of 15 U.S.C. § 1692e(8).

## COUNT V
## Violation of 15 U.S.C. § 1692e(10)

76. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 55 above as if fully set forth herein.

77. Section 1692e(10) prohibits the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

78. Defendant's email collection system gave consumers the appearance of being able to respond while systematically rejecting all consumer replies.

79. This deceptive email system prevented Plaintiff from effectively disputing the debt through the communication channel Defendant provided.

80. Defendant's conduct constitutes a violation of 15 U.S.C. § 1692e(10).

## COUNT VI
## Violation of 15 U.S.C. § 1692f

81. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 55 above as if fully set forth herein.

82. Section 1692f prohibits a debt collector from using unfair or unconscionable means to collect or attempt to collect any debt.

83. Attempting to collect a debt that was contractually excused by a force majeure clause is unfair and unconscionable.

84. Configuring an email system to block consumer replies while maintaining the appearance of accessibility is unfair and unconscionable.

85. Defendant's conduct constitutes a violation of 15 U.S.C. § 1692f.

## COUNT VII
## Violation of 15 U.S.C. § 1692f(1)

86. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 55 above as if fully set forth herein.

87. Section 1692f(1) prohibits the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

88. Defendant collected and attempted to collect $115.39 in interest charges that were not authorized by any agreement or permitted by law.

89. Defendant's conduct constitutes a violation of 15 U.S.C. § 1692f(1).

## COUNT VIII
## Violation of the Texas Debt Collection Act

90. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 55 above as if fully set forth herein.

91. Defendant violated Tex. Fin. Code § 392.304(a)(8) by misrepresenting the character or extent of a consumer debt by representing that Plaintiff owed a debt that was contractually void.

92. Defendant violated Tex. Fin. Code § 392.303(a)(2) by collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the

interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer.

93. Defendant's $115.39 in added interest charges were not authorized by any agreement or permitted by law.

## COUNT IX
## Violation of the Texas Deceptive Trade Practices Act

94. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 55 above as if fully set forth herein.

95. Pursuant to Tex. Fin. Code § 392.404(a), a violation of the Texas Debt Collection Act is a deceptive trade practice under Tex. Bus. & Com. Code § 17.50 and is actionable under the DTPA.

96. Defendant's violations of the TDCA, as set forth above, constitute violations of the DTPA.

97. Plaintiff is entitled to recover actual damages, court costs, and reasonable attorney's fees pursuant to Tex. Bus. & Com. Code § 17.50(b).

98. If Defendant's conduct is found to have been committed knowingly or intentionally, Plaintiff is entitled to treble damages pursuant to Tex. Bus. & Com. Code § 17.50(b)(1).

99. Defendant's conduct was knowing and intentional, as evidenced by Patrick's November 11, 2025 statement "I believe you" followed by his refusal to cease collection, and by Defendant's systematic email blocking system designed to prevent consumer communication.

## JURY DEMAND

100.    Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

101.    Plaintiff prays for the following relief:

    a.    Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

    b.    Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

    c.    Actual damages, court costs, and reasonable attorney's fees pursuant to Tex. Fin. Code § 392.403;

    d.    Actual damages, court costs, reasonable attorney's fees, and if applicable, treble damages, pursuant to Tex. Bus. & Com. Code § 17.50;

    e.    Reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3);

    f.    Such other and further relief as the Court deems just and proper.

Dated: 1/22/2026

                                              */s/ Daniel J. Ciment*

                                              Daniel Ciment
                                              CIMENT LAW FIRM, PLLC
                                              400 E. Weatherford St.
                                              Fort Worth, TX 76102
                                              833-663-3289, ext. 1001
                                              Daniel@cimentlawfirm.com
                                              ATTORNEY FOR PLAINTIFF